IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

      Appellant,

v.

Case No.  5D14-3704 &
5D15-1749

WILLIAM LONG,

      Appellee.

_____/

Opinion filed April 22, 2016

Appeal from the Circuit Court
for Citrus County,
Patricia V. Thomas, Judge.

Rhonda B. Boggess and Gina P. Grimsley,
of Taylor, Day, Grimm & Boyd,
Jacksonville, for Appellant.

Christopher V. Carlyle, of The Carlyle
Appellate Law Firm, The Villages, for
Appellee.

BERGER, J.

      State Farm Mutual Automobile Insurance Company appeals the final judgment

entered after a jury returned a verdict in favor of William Long in the amount of

$166,000.  Because we agree with State Farm that it was error to allow a physician's

assistant to testify as an expert on the need and cost for a future surgery, we reverse and remand for a new trial on damages.

Long injured his shoulder in a motorcycle collision.[1] Thereafter, he sued his uninsured motorist carrier, State Farm, seeking to recover $100,000 in uninsured motorist/underinsured motorist coverage. The jury ultimately awarded Long damages totaling $166,000, which included $116,000 for past and future medical expenses. Of that amount, $46,283.96 consisted of stipulated past medicals.

In support of his claim for damages, Long called Mr. Kim Nordelo, a physician's assistant, to testify regarding future medical expenses. Nordelo works exclusively with Long's orthopedic surgeon, Dr. Frank Cannon.[2] Nordelo testified that shoulder issues make up a fair portion of his practice and that fifty percent of patients who present with shoulder problems ultimately need surgery. Between 2009 and 2014, Nordelo saw Long approximately ten times.

Nordelo testified that during the course of Long's treatment he administered at least four cortisone injections to relieve pain. He testified that cortisone provided relief for about three to four months. Nordelo further explained that someone with Long's condition can only receive a limited number of injections because too many injections may result in a weakened rotator cuff and tendon, leading to a tear. It was Nordelo's opinion that Long had "pretty much reached his limit as far as injections are concerned." He indicated that Long could probably have one or two more injections but, beyond that,

---

[1] At trial, it was determined that Long was driving his motorcycle over the posted speed limit and while under the influence of alcohol. The jury found he was 45% at fault for his injuries.

[2] Dr. Cannon was not called to testify at trial.

surgery would be the only other option to relieve the pain. It was his opinion that Long "will need possibly one or two more injections at most and then surgical decompression of the shoulder." Nordelo testified that the cost for each shoulder surgery would be roughly $1500 to $2000 for surgeon's fees, $2000 for anesthesia, $10,000 for facility costs, and $2000 to $3000 for rehabilitation.

State Farm objected to Nordelo's testimony, arguing that because he is a physician's assistant–not a surgeon–he was not competent to give his opinion on Long's need for a future surgery or the costs associated with such a surgery.[3] Specifically, State Farm argued:

> My concern about Mr. Nordelo is he's a physician's assistant. If he is going to opine that there's a future need for surgery, I don't think he's competent to do that. He's not a physician, he's not a surgeon. He works under the approval of a physician or a surgeon, Dr. Cannon.
>
> . . . .
>
> PA's must work under supervision – a PA can only practice within the scope of practice of their physician, and a PA can only practice under the supervision of that physician. It's the physician's ultimate determination whether somebody needs surgery or not. They aren't qualified.

---

[3] We decline to address State Farm's claim that Nordelo's testimony constituted impermissible "pure opinion testimony" because that precise argument was not raised below. Sunset Harbour Cond. Assn. v. Robbins, 914 So. 2d 925, 928 (Fla. 2005) ("In order to be preserved for further review by a higher court, an issue must be presented to the lower court if it is to be considered preserved." (quoting Tillman v. State, 471 So. 2d 32, 35 (Fla. 1985))); see also Rojas v. Rodriguez, 185 So. 3d 710, 711–12 (Fla. 3d DCA 2016) (finding that failure to raise a Daubert objection or request a Daubert hearing prior to conclusion of trial prohibits raising such claim after the trial (citing Booker v. Sumter Sheriff's Office/N. Am. Risk Servs., 166 So. 3d 189, 192-93 (Fla. 1st DCA 2015))).

As for the costs, State Farm maintained that because Nordelo was not the one actually billing for and performing the surgery, he was not qualified to testify regarding the costs associated with the surgery.[4]

To qualify as an expert, the witness must have the requisite knowledge, skill, experience, training, or education on the subject about which the witness is called to testify.  § 90.702, Fla. Stat.; Fla. R. Civ. P. 1.390.  The decision to qualify a witness as an expert is left to the sound discretion of the trial judge.  Penalver v. State, 926 So. 2d 1118, 1134 (Fla. 2006) (citing *Holland v. State*, 773 So. 2d 1065 (Fla. 2000)).  Although the trial judge "has broad discretion in determining the range of the subjects on which an expert can testify. . .", id. (citing Pagan v. State, 830 So. 2d 792 (Fla. 2002)), this discretion is not unfettered.  See GIW S. Valve Co. v. Smith, 471 So. 2d 81, 82 (Fla. 2d DCA 1985) (citing Carver v. Orange Cty., 444 So. 2d 452 (Fla. 5th DCA 1983)); The Trustees of Cent. States Se. and Sw. Areas, Pension Fund v. Indico Corp., 401 So. 2d 904, 905 (Fla. 1st DCA 1981).

Pursuant to Florida Statutes and Florida Administrative Law, physician's assistants must be supervised by a physician, and their services must be delegated by the supervising physician.  § 458.347(2)(e), Fla. Stat. (2013).[5]  Physicians may delegate many tasks and procedures to their physician's assistant, but the duty to make a final diagnosis is nondelegable.  Fla. Admin. Code R. 64B8-30.012(2)(a) (2013).

---

[4] Nordelo testified that he enters the billing procedure codes, but that someone else takes that procedure code and determines the billing.

[5] The 2014 and 2016 amendments to section 458.347 do not affect this Court's analysis.  Ch. 2016-125, § 1, Laws of Fla. (C.S.H.B. 375); Ch. 2014-18, § 15, Laws of Fla. (S.B. 936).

4

Nordelo testified that he is not a medical doctor and that all his work is done under the supervision of Dr. Cannon. He does not have the authority to enter a note in a patient's medical record without approval of the doctor, and his notes must be countersigned by Dr. Cannon. Nordelo conceded that whether Long needed surgery was Dr. Cannon's call, not his.[6] Nevertheless, he insisted "I have worked with the man for an extended period of time and I know how he thinks."

Because State Farm properly challenged Nordelo's competence to testify as an expert on the need for a future surgery, the burden was on Long to establish, by a preponderance of the evidence, the basis for the admissibility of Nordelo's testimony. See Baan v. Columbia Cty., 180 So. 3d 1127, 1131-32 (Fla. 1st DCA 2015). Long failed to satisfy his burden. As State Farm convincingly argues, and as Nordelo directly testified, the decision to diagnose the need for a future surgery rests solely with the physician in this case Dr. Cannon, not the physician's assistant.

We do not mean to imply that a physician's assistant can never qualify as an expert. Quite the contrary. Nordelo was certainly qualified to testify regarding the treatment and care he provided.[7] However, Nordelo's ability to "know how [Dr. Cannon]

___

[6] The medical records of Dr. Cannon and Ocala Orthopaedic Group were admitted into evidence without objection. A record dated June 6, 2012, states: "[i]f cortisone injections no longer provide him with significant benefit or relief of his impingement symptoms, surgical intervention would be warranted." However, this record was not countersigned by Dr. Cannon. Notably, a September 27, 2012 note signed by Dr. Cannon recommended cortisone injections in both shoulders for the impression of bilateral shoulder impingement. Notes from Long's last visit on September 26, 2013, revealed he had full range of motion of both shoulders with negative signs of impingement. No follow-up care was contemplated.

[7] It is entirely possible for a witness to be an expert in one area but not another. For example, in Logan v. Dayton Hudson Corp., 865 F.2d 789, 791 (6th Cir. 1989), the Sixth Circuit upheld a district judge's decision to grant a new trial after determining it

thinks" is not sufficient to establish that he had the requisite knowledge and skill necessary to make him competent to opine on the issue of whether, within a reasonable degree of medical certainty, Long required future surgery. Such an opinion was beyond his qualifications and expertise.

Long insists that Chapter 766, which governs medical malpractice cases, supports the proposition that a qualified health care provider who is not a medical doctor is permitted to testify as an expert regarding future damages. We are not persuaded by this argument.

Section 766.202(6), Florida Statutes (2013), defines "medical expert" as "a person duly and regularly engaged in the practice of his or her profession who holds a health care professional degree from a university or college and who meets the requirements of an expert witness as set forth in s. 766.102."[8] While Nordelo may

_____

was error to allow a chiropractor qualified to testify as an expert in chiropractic matters to opine on the plaintiff's need for future surgery. Like Nordelo, the chiropractor in <u>Logan</u> testified that he was not licensed to perform surgery or give a diagnosis on whether surgery would be required by a patient. <u>Id.</u> at 790. Similarly, in <u>GIW</u>, the second district held that it was error to allow an expert witness who was a clinical psychologist and clinical neurologist to opine on the future condition of the brain resulting from an accident. 471 So. 2d at 82-83. While the psychologist in <u>GIW</u> was authorized to give opinion testimony as to plaintiff's existing mental condition and existing organic brain damage, because the witness was not a medical doctor, the witness was not qualified to opine as an expert on the future deterioration of the plaintiff's brain as a result of the accident. <u>Id.</u> at 82.

[8] Section 766.102(5)(c)1., Florida Statutes (2011) provides:

> (c) If the health care provider against whom or on whose behalf the testimony is offered is a health care provider other than a specialist or a general practitioner, the expert witness must have devoted professional time during the 3 years immediately preceding the date of the occurrence that is the basis for the action to:

qualify as a medical expert under this statute for purposes of the medical malpractice presuit screening process, this is not a medical malpractice case. Furthermore, we have previously recognized that "section 766.102(5) provides a less stringent standard for qualification of experts in the medical malpractice screening process than might be required of an expert to offer testimony at trial." Apostolico v. Orlando Reg'l Healthcare Sys., Inc., 871 So. 2d 283, 284 n.4 (Fla. 5th DCA 2004).

We have been unable to locate any authority allowing a physician's assistant to testify as an expert at trial regarding future treatment decisions when, as here, the witness was not authorized to make the decision in a clinical setting. As previously stated, Nordelo testified that he was not authorized to independently diagnose a patient's need for surgery. Thus, we conclude the trial court abused its discretion when it allowed him to offer an opinion on the issue of whether a future surgery for Long was appropriate and reasonably certain to occur.

---

1. The active clinical practice of, or consulting with respect to, the same or similar health profession as the health care provider against whom or on whose behalf the testimony is offered;

2. The instruction of students in an accredited health professional school or accredited residency program in the same or similar health profession in which the health care provider against whom or on whose behalf the testimony is offered; or

3. A clinical research program that is affiliated with an accredited medical school or teaching hospital and that is in the same or similar health profession as the health care provider against whom or on whose behalf the testimony is offered.

Moreover, Nordelo's testimony was not without significant impact on the outcome of the trial as it was used exclusively to establish Long's claim for future damages.[9] As such, the error in allowing his testimony was not harmless. Accordingly, we reverse and remand for a new trial on the issue of future damages. See Rolon v. Burke, 112 So. 3d 118, 120 (Fla. 2d DCA 2013) (explaining where there are damages that fall in a discrete category separate from the damage awards disputed in a motion for new trial, the new trial must be limited to the damage awards contested) (citing ITT Hartford Ins. Co. of the Se. v. Owens, 816 So. 2d 572, 577 (Fla. 2002))); McCown v. Estate of Seidell, 831 So. 2d 218, 220 (Fla. 5th DCA 2002) ("The defendant does not contest the amount of past expenses . . . . Thus, we note that because only the future medical and future lost wage claims are at issue, the trial on damages shall be limited to same." (citing Owens, 816 So. 2d at 572))).

Additionally, this case was consolidated with case number 5D15-1749, State Farm's appeal of the final judgment awarding attorney's fees. The parties stipulated that the fee judgment should be reversed in the event this Court reversed the final judgment awarding damages. Accordingly, the final judgment awarding attorney's fees is likewise reversed and remanded for further proceedings.

REVERSED and REMANDED.

SAWAYA and WALLIS, JJ., concur.

---

[9] Had the trial court properly sustained State Farm's objection to Nordelo's testimony, Long would have had the opportunity to call Dr. Cannon to testify regarding his claim for future damages. We therefore decline to address State Farm's alternative argument that Nordelo's testimony was too speculative to support the award for future damages.